# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

**CR 16  0454 RS**

FILED

NOV -1 2016

SUSAN Y. SOONG
VIA CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JEFFRY HILL,

DEFENDANT(S).

---

## INDICTMENT

Title 18 U.S.C. § 1341– Mail Fraud; 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

A true bill.

_____ Foreman

Filed in open court this ___1___ day of

November 2016

_____ Clerk

Bail, $ No bail warrant

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1341– Mail Fraud; 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum penalties for all counts:
20 years of imprisonment (18 U.S.C. §§ 1341, 1343);
$250,000 fine or twice gross gain or loss (18 U.S.C. § 3571(b)(3));
3 years of supervised release (18 U.S.C. § 3583(b)(2));
$100 special assessment (18 U.S.C. § 3013)

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**DEFENDANT - U.S.**
▶ JEFFRY HILL

DISTRICT COURT NUMBER
CR 16 - 0454 RS

FILED NOV - 1 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SEALED BY ORDER OF COURT

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
Alcohol and Tobacco Tax and Trade Bureau

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  BRIAN STRETCH
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  Benjamin Kingsley

**DEFENDANT**

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed

DATE OF ARREST ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: no bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:  Before Judge:

Comments:

BRIAN J. STRETCH (CABN 163973)
United States Attorney

FILED
NOV - 1 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SEALED BY ORDER OF COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16 0454 RS |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. §§ 981(a)(1)(C), 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| JEFFRY HILL, | |
| Defendant. | SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

1. Defendant Jeffry HILL resided in the Northern District of California.

2. Hill Wine Company ("HWC") was a California limited-liability company. HWC was in the wine business. Among other things, HWC grew grapes, managed vineyards, purchased grapes and grape juice, and produced and sold grape juice and wine. HWC was controlled by HILL. HILL controlled the bank accounts for HWC, directed its operations, and negotiated contracts for purchasing and selling grapes, wine, pre-fermented grape juice, and other wine-related products.

3. Winemakers in the United States, including HWC, were regulated by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"). TTB was a federal agency within the United States

INDICTMENT

Department of the Treasury. Winemakers in the United States were required to obtain permits from TTB to operate.

4. Federal law imposed excise taxes on wine and various regulatory requirements on winemakers. These taxes and regulations were enforced by TTB. The regulatory requirements included regulations governing the labeling of wine made in the United States based on the geographical origin, or "appellation," of wine grapes, and of grape type.

5. Under federal regulations, an "American Viticultural Area," or "AVA," was a "delimited grape-growing region having distinguishing features . . . and a name and a delineated boundary." 27 C.F.R. § 4.25. TTB regulations established particular AVAs based on various unique features of winegrowing areas that wine consumers and experts deemed important in evaluating the taste of wine. TTB regulations also approved a list of names for labeling of specific types of grape varieties grown in the United States.

6. Under federal law, wine could only be labeled as originating from an AVA if 85% of the liquid volume of the wine was made from that region and the remainder came from the state in which the AVA is located. Additionally, under federal law, if wine was labeled with a particular approved grape name, that wine must also have originated from a particular AVA. TTB regulations required that 75% of the liquid volume of the wine be from that type of grape, grown in that AVA.

7. To enable TTB to fulfill its regulatory purpose, permitted winemakers were required to keep records demonstrating the source of the wine that they made. These records included weigh tags, bills of lading, and other documents that identify the amount and source of grapes, pre-fermented grape juice, or wine under the control of an entity or in shipment from one location to another.

8. Many wine drinkers and wine experts considered the geographic region in which wine grapes are grown to be a significant determinant of the taste of a particular wine. As a result, wine made in different regions, even within California or within a particular sub-region of California, carried different values and were sold for different prices. "Napa Valley" or "Napa" was an approved AVA under TTB regulations, with sub-AVAs designated for particular regions within Napa that were considered to have their own unique geographical features that affected the taste of wine. The Napa Valley AVA covered much, but not all, of Napa County, California. The Napa Valley was considered

INDICTMENT                                          2

one of the premier winemaking regions in California. Wine made from grapes grown in the Napa Valley AVA generally was seen as premium wine, and therefore carried a price premium on the market compared to wine made from grapes grown in other parts of California. Similarly, the inputs into Napa Valley wine, including grapes grown in Napa, were typically more valuable than grapes grown in other regions of California.

9. Wines made from different types of grapes carried different values. Wine made from cabernet sauvignon grapes generally could be sold for a higher price on the market than other types of red wine made in California. Wine made from Napa Valley AVA cabernet sauvignon grapes was typically among the most expensive types of wine made in California.

10. HWC operated a winery and tasting room in Napa County, California, at 1001 Silverado Trail, St. Helena, California. HWC also used winemaking equipment at two other winemaking facilities owned by others: The Ranch Winery, at 105 Zinfandel Lane, St. Helena, California, and Carneros Vintners, at 4202 Stage Gulch Road, Sonoma, California. HWC obtained permits from TTB to operate at each of these three facilities. HILL's name was on each permit application on behalf of HWC. HWC made wine at each facility, from grapes it grew or purchased from other entities or individuals. HWC bottled wine under its own brand name for sale on the market, sold bulk wine or bulk pre-fermented grape juice to other entities, and sold bottled wine to other entities for sale under their brand names.

### The Scheme to Defraud

11. Beginning at a date unknown, but no later than August 2012, and continuing through a date unknown, but to at least December 2013, HILL knowingly devised, intended to devise, and carried out a scheme and artifice to defraud HWC's customers as to material matters, and to obtain money and property from HWC's customers by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts, which scheme is described further below.

12. As part of the scheme to defraud, through HWC, HILL grew or purchased grapes grown outside of the Napa Valley AVA, or purchased pre-fermented grape juice or wine made from grapes grown outside of the Napa Valley AVA. HILL then sold bulk grape juice, bulk wine, or bottled wine made from these non-Napa Valley AVA grapes while representing these products to have been made

INDICTMENT                                              3

from 100% Napa Valley AVA grapes. Based on these and other material misrepresentations, promises, and omissions made or directed to be made by HILL, HWC's customers believed that they were purchasing Napa Valley wine products. HILL also misrepresented the varietal of wines and grape juice to customers. As a result, these customers purchased from HWC wine or wine products that they would not otherwise have purchased, or paid higher prices for wine or wine products than they would have otherwise paid, absent these falsehoods. These misrepresentations included selling as "cabernet sauvignon" wine that was made from other varietals of grapes. HILL customers paid over $1,500,000 for fraudulently mislabeled wine, grape juice, or wine products.

13. As further part of the scheme to defraud, HILL concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done in furtherance of the scheme, including by:

a) altering or creating fraudulent bills of lading, weigh tags, or other records, such that the records falsely stated that wine grapes were of a type or grown in a region that they were not;

b) maintaining false records of HWC's inventory, such that HWC records misstated the geographic origin or varietal of grapes, wine, or grape juice in HWC inventory;

c) concealing from employees at HWC the geographical origin of grapes processed at HWC facilities, and falsely stating to HWC employees that grapes grown outside of Napa Valley were grown in Napa Valley;

d) moving grapes or wine between HWC's three facilities, to obscure the origin of the grapes and allow HILL to change the paperwork on the grapes at his facility, 1001 Silverado Trail in Napa County;

e) intercepting trucks shipping grapes and falsely altering or changing the paperwork on the trucks that indicated the origin and varietal of the grapes;

f) providing sealed manila envelopes to growers and truckers of grapes purchased by HWC. These sealed manila envelopes included paperwork that misrepresented the varietal and geographical origin of the grapes grown or trucked. HILL instructed the growers or drivers not to open the manila envelopes and simply to hand them to the

INDICTMENT                                           4

weighmasters of the grapes at the destination;

g) instructing grape growers outside of the Napa Valley AVA never to tell anyone that HILL, through HWC, had bought grapes from them; and

h) instructing HWC employees who picked grapes to mislabel the origin and varietal of grapes that they picked.

COUNTS ONE THROUGH FOUR: (18 U.S.C. § 1341 – Mail Fraud)

14. The factual allegations of Paragraphs 1 through 13 are re-alleged and incorporated as if fully set forth here.

15. Beginning at a date unknown, but no later than August 2012, and continuing through a date unknown, but to at least December 2013, the defendant,

JEFFRY HILL,

did knowingly and with the intent to defraud devise and execute, and attempt to execute, a material scheme and artifice to defraud as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts.

Execution of the Scheme

16. On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendant did knowingly cause the following items to be mailed, sent, and delivered by the United States Postal Service and private and commercial interstate carrier:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| 1 | 8/16/2012 | $498,733 check from ASV Wines to HWC |
| 2 | 9/13/2012 | $5,228.75 check from ASV Wines to HWC |
| 3 | 11/5/2012 | $23,700 check from Trinitas Cellars to HWC |
| 4 | 1/1/2013 | $18,750 check from Trinitas Cellars to HWC |

Each in violation of Title 18, United States Code, Section 1341.

COUNTS FIVE THROUGH EIGHT: (18 U.S.C. § 1343 – Wire Fraud)

17. The factual allegations of Paragraphs 1 through 13 are re-alleged and incorporated as if fully set forth here.

INDICTMENT 5

18. Beginning at a date unknown, but no later than August 2012, and continuing through a date unknown, but to at least December 2013, the defendant,

JEFFRY HILL,

did knowingly and with the intent to defraud devise and execute, and attempt to execute, a material scheme and artifice to defraud as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts.

Execution of the Scheme

19. On or about the dates set forth in the separate counts below, in the Northern District of California and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendants did knowingly transmit and cause to be transmitted the following writings, signs, signals, pictures, and sounds in interstate commerce by means of wire communications:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| 5 | 11/19/2012 | Wire transfer of $473,062.50 from Don Sebastiani & Sons to HWC |
| 6 | 12/17/2012 | Wire transfer of $473,062.50 from Don Sebastiani & Sons to HWC |
| 7 | 1/16/2013 | Wire transfer of $473,062.50 from Don Sebastiani & Sons to HWC |
| 8 | 2/21/2013 | Wire transfer of $473,062.50 from Don Sebastiani & Sons to HWC |

Each in violation of Title 18, United States Code, Section 1343.

FORFEITURE ALLEGATION:   (18 U.S.C. §§ 981(a)(1)(C), 982(a) & 28 U.S.C. § 2461(c) – Criminal Forfeiture)

20. All of the allegations contained in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a), and Title 28, United States Code, Section 2461(c).

21. Upon a conviction for the offenses alleged in Counts One through Eight of this Indictment, the defendant,

JEFFRY HILL,

shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C.

INDICTMENT                                                    6

1  § 2461(c) all property constituting, and derived from, proceeds the defendants obtained directly and
2  indirectly as the result of those violations, including but not limited to a forfeiture money judgment of
3  not less than $1,500,000, representing the amount of proceeds obtained as a result of the offenses and
4  scheme to defraud alleged in Counts One through Eight.
5         22.    If any of the aforementioned property, as a result of any act or omission of the
6  defendants,
7         a.     cannot be located upon the exercise of due diligence;
8         b.     has been transferred or sold to, or deposited with, a third person;
9         c.     has been placed beyond the jurisdiction of the Court;
10        d.     has been substantially diminished in value; or
11        e.     has been commingled with other property that cannot be divided without difficulty;
12 any and all interest the defendants have in other property shall be vested in the United States and
13 forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).
14        All in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a); Title 28,
15 United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:                                          A TRUE BILL

                                                _____  11/1/16
                                                FOREPERSON

BRIAN J. STRETCH
United States Attorney

_____
ELISE BECKER
Deputy Chief, Criminal Division


(Approved as to form: _____ )
                      AUSA KINGSLEY

INDICTMENT                                      7